UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

UNITED STATES OF AMERICA )
                         )
        V                )    Criminal No. 2:14-CR-00009-NT
                         )
FRITZ BLANCHARD          )

**DEFENDANT'S SENTENCING MEMORANDUM**

The Defendant responds to the Government's request for enhancements for the defendant's role in the offense and obstruction of justice.  Additionally, the defendant addresses his objections and arguments contained in the Amended Presentence Investigation Report (PSR)  Because the defendant's objections relate and impact on the government's requests, the defendant will address his objections first.

Defendant's argues that all the issues in this case are affected to a degree by the fact that the jury was given the option in the Court's jury instructions and verdict form to find the defendant guilty of the offense of Interstate Transportation for the Purpose of Prostitution and Aiding and Abetting as separate theories of convict.  This option was presented despite the fact that that the defendant was facing a single count of conviction.  The jury reported that it was unable to reach a verdict on both options but, after being reinstructed, did convict for the option charging Aiding and Abetting.  The Government relies, to a large degree upon the credibility of Samuel Gravely.  The defense asserts that the aiding and abetting theory of conviction illustrates that the jury gave little or no weight to Gravely's testimony.  If it had, the jury surely would have reached a verdict on both theories of conviction.  Gravely's self-serving testimony and credibility were significantly undermined by his claim that he knew nothing about prostitution until informed about it by Blanchard.  AP testified on direct examination that she and Gravely talked about going to Miami after a sightseeing stop in Boston. (trial transcript 1, page 161 and 165, hereinafter referenced as "1:161,165."  Gravely admitted this trip was planned in his trial testimony. 1:114, 115  On cross examination, AP disclosed that there was a discussion in Portland and

the decision to go to Miami with stop in Boston was made. 2:047  She only assumed the defendant was going. 2:048  She then revealed that Gravely told her weeks before that he wanted to pick up a girl in Miami who had worked for him as prostitute "for years and made him a lot of money."  2: 048-049  This testimony was unrebutted and completely undermined his claims about not knowing the "prostitution business."

**Defendant's Objection #1**

The defendant proceeded to trial and, therefore, objects to any information in the presentence report not supported by trial testimony and/or exhibits that he did not have the opportunity to confront and attack at trial.

In Paragraph 4, he objects to the assertion that KH was "pressured" to engage in prostitution by Gravely and Blanchard.   No witness at trial testified to this claimed fact.

In Paragraph 5, defendant objects to the assertion that he invited KH to travel to Boston.  In his trial testimony, Gravely claimed that KH was invited to Boston by "Blanchard or me." 1:71  KH testified that she did not remember who did the talking when she was invited to go to Boston. (2:060-061)  The defendant objects to the assertion that MJ was a minor given that this evidence was not presented at the trial.  The defendant objects to the assertion that AP knew the real purpose of the trip to Boston was prostitution.  She testified thate there was no plan to do anything in Boston. 2:052  She and Gravely had discussions about going to Miami, Florida, both before they left Maine (1:148; 161) while they were driving to Boston.  1:165.  She testified that she only learned that she might work in Boston when informed by Gravely that the defendant was going to put us up to speed on something. 2:009,011

In Paragraph 6,  the defendant objects to the assertion that MJ and AP told KH that they worked as escorts and that they already "did it."  This is not supported by any trial testimony.

In paragraph 8 the defendant objects to the assertions of the claimed CI and to all of the

assertions in Paragraph 9 because none of this information was presented at trial.[1]

Finally, in Paragraph 10, the defendant objects to the assertion that he showed Gravely pictures of women who were already "working" for him. Again, this assertion is not supported by Gravely's trial testimony.

**Defendant's Objection #2**

In Paragraphs 11 and 16, the defendant objected to the application of USSG §3D1.4 and the conclusion in that there were three victims to the offense of conviction. The jury was specifically instructed that they only needed to find he had conspired and aided and abetted in the transportation in interstate commerce of one individual. Therefore, there is no evidence the jury found more than one victim was transported in interstate commerce for purposes of prostitution. Accordingly, he does not agree with the conclusion in Paragraph 16 that the guideline calculations should be applied as if there were three separate counts of conviction, or that a multiple count adjustment under USSG §3D1.4 should be applied.

The defendant argues that AP was involved in prostitution with Gravely exclusively. Therefore, AP is not a victim in this case. The defendant testified at trial that he knew AP was working for Gravely as a prostitute. Gravely claimed at trial that the defendant introduced him to the profits of prostitution and showed him how business would work. 1:26  He said the defendant was present during discussions with AP regarding prostitution (1:34) and while pictures were taken for an internet posting. 1:35  AP denied that the defendant was present when the pictures of her were actually taken. 1:135-36. Gravely did admit, however, that the money for prostitution from AP went to him (1:051) and this was confirmed by AP, 1:140-41; 2:050.  AP testified that she and Gravely had multiple discussions about going to Miami, Florida to pick up a prostitute who had worked for years for Gravely. 1:148-049 (Presque Isle discussion); 1:161; 2:047 (Portland discussion); 1:165 (Discussion in SUV on the trip to Boston.)  AP testified that there were no discussions between her, Gravely and the

---
[1] In addition to not being supported by trial testimony, the defendant objects because he has the right to exercise his Fifth Amendment right to remain silent against any claims of criminal conduct not encompassed in the current charge.

defendant about the defendant going to Miami, she just assumed he was going. 2:047-48. She testified, however, that MJ was going on the trip. 2:051. Gravely confirmed the trip and testified that KH agreed to go to Miami, as well. 1:114-115. KH testified at trial that she could not remember agreeing to go to Miami with Gravely, but did reluctantly concede that she had sent a text to her friend twenty minutes before arriving at the Boston hotel stating in her text an intent to travel to "Miami with a friend." She also admitted that she sent a text stating she had quit her job in Portland. 2:130-131. AP testified that there was no plan to do anything (prostitution) in Boston. 2:052  The first she knew of any potential plan for Boston was when Gravely told her right before entering the hotel, to bring KH up to speed. 1:168. (Also see defendant's argument concerning a role enhancement below)

      The defendant argues that there is insufficient evidence to show a conspiracy involving MJ. The government relies on the self serving testimony of Gravely to support the allegation. Gravely testified that both he and the defendant recruited MJ for prostitution. 1:058  Further, he claims that the defendant took photos of MJ and they posted a back page ad in Portland for her services. Further, he claimed that MJ saw a customer in Portland prior to the trip to Boston (and on to Miami) while he, the defendant and AP waited in the SUV. AP testified she was not sure if MJ saw any customers in Portland. 1:160  There was no evidence that MJ attempted to engage in Prostitution in Massachusetts on the 28th of March. Given this evidence, or lack of evidence, and the additional defense argument below (please see defendant's argument concerning a role enhancement), the defendant argues that MJ was not an identifiable victim of this offense.

      The defendant argues that there is insufficient evidence to show a conspiracy involving KH. Again, the foundation for this offense rests upon the self serving testimony of Gravely. Gravely claimed that both he and the defendant recruited KH. (1:071) She testified that she was told by Gravely that if she came on a trip to Boston he would be paying all the expenses. (2:069)  KH believed the purpose of the trip was to sight seeing. 2;061  Gravely claimed that KH knew on the way to Boston that she was expected to work as an escort. 1:115  KH denied she had this knowledge prior to arriving at the

hotel room in Boston. 2:078-079  KH testified that she did not remember who was doing the talking when she was invited to go on the trip to Boston. 2:060-61  KH did acknowledge, however, that she sent a text to a friend twenty minutes before arriving at the hotel in Boston that she quit her job in Portland and was going to Miami with a friend.  2:130-132

There were three potential victims presented at trial, AP, MJ, and KH.  As discussed above, the jury was given the initial opportunity by way of jury instructions and a special verdict form to consider alternative theories when deciding this single court case.  After inquiring of the court if they needed to find a unanimous verdict under each theory, the jury returned a verdict on the theory of Aiding and Abetting only.  While the law makes no distinction as to the theory relied upon by a jury under normal circumstances, the defendant feels that in this circumstance, the jury was provided with an opportunity to compromise.  The defendant argues that the jury's verdict could be viewed as a statement as to their view of his culpability.  Here, there could be a distinction with a difference.  The jury's verdict could have been based on as little as his decision to assist Gravely by securing and booking the room in Boston or the verdict could have been based upon the joint conspiracy details claimed by the government in its filing.  The aiding and abetting decision would argue for a move toward the former, rather than the latter.  Defendant argues it is unclear, based upon the requirement that the jury need only find that the aiding and abetting involved one individual, that multiple victims were found.

**Objection #3**

Paragraphs 14 and 41, the defendant argues that his decision to proceed to trial was reasonable given the scope of his alleged involvement in the conspiracy that the government was claiming. The defendant acknowledged the fact that he knew that Gravely was involved in prostitution and was present, but not involved, when AP worked for Gravely in Maine.  Further, when Gravely traveled to Boston with AP, MJ, KH and him, he did book a room for them.  This evidence alone could be sufficient for conviction on an aiding and abetting theory because in booked and secured a room in Boston.  Despite this conviction, the defendant argues that valid trial issues were present, and therefore

he should not lose all acceptance of responsibility for presenting the issues for a jury's determination.

**Objection #4**

Paragraphs 20, 27 and 33 address the defendant's role in the offense. The defendant argues that he was not one of the leaders of an offense. . The defendant recognizes that the primary evidence that he led the claimed conspiracy with Gravely was, again, the self serving testimony of defendant Gravely. The prosecution has detailed his evidence in its filing. Absent Gravely's testimony, the evidence reveals that Gravely was the sole leader of the enterprise. The sum and substance of the evidence from the witnesses other than Gravely is as follows:

AP worked for Gravely and gave the money she earned just to him. 1:51; 2:050  KH was invited to go to Boston by Gravely. 1:71  Gravely denied having phone contact with AP or KH from the track but this was proven by the phone records and the testimony of KH and AP. 2:019 (AP acknowledges text to Gravely from track. 2:134; KH acknowledges 6 texts to and from Gravely from the track.) Concerning AP, Gravely took her pictures for a Backpage listing, 1:135; Gravely showed her the ad. 1:137; Gravely and she agreed to use her number in the original ad. 1:140; the money from clients went to Gravely. 1:140-141; She discussed how much to charge clients with Gravely. 1:141; She and Gravely discussed going to Miami to pick up a prostitute who worked with him for years. 1:148, 2:048-049; She gave Gravely her email address used in the Backpage listing. 1:160; When she met KH, Gravely did the introductions. 1:162, 2:051; Gravely asked her to buy things for MJ. :157; On the way to Boston, Gravely paid for food for her, MJ, and KH. 1:166; Gravely gave her instruction to fill KH in. 1:168; Gravely told her who was going to town and that the defendant was going give her information. 2:009-011; She only worked for Gravely. 2:050; Gravely gave her money and sent her to Walmart to buy things for MJ. 2:053.

KH met Gravely and the defendant in Portland 2:059; She didn't remember if one or the other was doing most of the talking. 2:060-061; she was invited to go to Boston for sight seeing (2:061) and Gravely told her everything would be paid for. 2:069; When she met MJ and AP Gravely did the

introductions. 2:070-071; She said that the defendant and MJ seemed to be together, but at the same time not. 2:072; MJ and AP were using AP's phone. 2:074; When they stopped at McDonald's AP paid with Money from Gravely. 2:076; AP kept telling her to get ready (2:078) saying, didn't Gravely explain anything to you. AP then sent a text to Gravely. 2:079; Gravely then sent a text to KH. 2:082; She exchanged numbers with AP (2:082, 132) and Gravely. 2;132; Her phone was used to call Gravely to come get them in downtown. 2.094; She never had phone communication with the defendant. 2:107; and she argued with Gravely about needing to make money. 2:133.

The defendant argues that all the manager and supervisor activities were by Gravely. The defendant did book the room at the Boston Hotel but claims it was at Gravely's request. Given the evidence detailed and the fact that, given the opportunity, the jury found that the defendant aided and abetted in the conspiracy, the enhancement as a manager or supervisor should not be applied.

**Objection #5**

Paragraph 26 provides for an adjustment for use of a minor in the conspiracy. The defendant argues that he should not be subject to an enhancement under USSG §3B1.4. Defendant argues that the indictment did not allege the use of a minor and no evidence of such was presented to the jury and therefore, it is not part of the record for the appeal.

**Objection #6**

Paragraphs 43 through 55 detail the defendant's criminal history of convictions. The defendant expresses no opinion on the information contained therein. However, he notes that paragraphs 50, 52 and 54 detail convictions that are all currently under appeal or review for various reasons. Accordingly, the defendant asserts his criminal history category could be reduced depending on the outcome of those motions and reviews. Further, he requests his sentencing be delayed pending the outcome of these pending actions.

**Objection #7**

Paragraph 83; Guideline Range: Based on the objections described above, the defendant asserts his

total offense level is 14 and his criminal history can not be determined at this time

.

## Enhancement for Role in the Offense

The Government requests a two-level enhancement for the Defendant's Role in the Offense pursuant to U.S.S.G. §3B1.1(c).  To apply the adjustment, the Court must find that the jury found that the defendant's conduct of conviction (criminal activity) involved at least two participants -- the defendant and another person.   It is clear the jury did.  The court's jury instruction required the jury to find that at least "one" individual was transported in interstate commerce.  The Government asks for the two-level manager or supervisor enhancement.

To be a manager or supervisor, the enhancement may apply where the defendant recruited and exercised control over just one other accomplice. *United States v. Solorio*, 337 F.3d 580, 601 (6th Cir. 2003)

The Government states that at the sentencing of Samuel Gravely (Criminal No. 2:13-CR-191-NT), this Court found that the criminal activity involved four participants (Gravely, Defendant, AP and KH).  The Defendant suspects that this finding was grounded upon an agreement by Gravely with the Prosecution Version and/or the Presentence Investigation Report.

The Government argues that the trial testimony and evidence supports the conclusion that Defendant and Gravely were partners in prostitution and the following supports this conclusion. Defendant knew that AP worked as a prostitute for Gravely; (Defendant admitted this fact)  Defendant helped Gravely post a Backpage ad; (Defendant denies this fact) and waited with him while she saw customers; (Defendant admitted this fact),  together, they decided to drive south because business was slow in Bangor;(Defendant denied this fact), in Portland, Defendant and Gravely together recruited MJ; (Defendant denied this fact), they then drove her back to the hotel room Defendant had rented, where Defendant took photos of her there, posted a Backpage ad of her listing his own phone number, was present while she saw customers, and got the money she earned; (Defendant denied these facts); he was

present when KH was recruited; (Defendant admitted this fact) and participated in the conversation inviting her to Boston; (Defendant denies this fact), he then drove with Gravely and all three women from Portland to Boston, reserving a hotel room in Boston along the way and paying for it from his own bank account (Defendant admitted these facts).

In Boston, he and Gravely attempted to post ads for two of the women, listing their availability for escort services in the Boston area (Defendant denies these facts). When that was unsuccessful, he conceived the idea to take the women to the "track," then escorted two of them there for several hours, showing them where to walk and telling them how to act, what sexual acts to perform and how much to charge. He instructed one of the women to give him the money she earned (Defendant Denied these facts).

The defendant has addressed this issue above in Objection #4 and repeats and incorporates his response herein.  The defendant argues that the bulk of the allegations from the government do not allege conduct that qualifies as manager or supervisor.  Counsel argues that even the alleged conduct at the track in Boston would not qualify if the defendant were merely following instructions from Gravely to show them the area as related by AP.  The defendant again argues that the self serving testimony of Gravely, clearly rejected by the jury with their aiding and abetting verdict, and the testimony of AP that Gravely revealed that he had at least one prostitute who had been making him money for years should destroy any reliance on Gravely's statements to establish the defendant's claimed leadership role in this offense.

### Enhancement for Obstruction of Justice

The Government requests a two-point enhancement for obstruction of justice under U.S.S.G. §3C1.1, based on Defendant's trial testimony.  The Government provides current case law which will not be repeated herein.  To assist the Court, the Government provided a summary comparing the Defendant's testimony on a few key issues with the balance of the evidence adduced at trial.  This listed evidence is also relevant to the issue of role enhancement and will not be repeated here.  The defendant

will stand on the transcripts of the trial and the verdict of aiding and abetting which, as discussed above, is an indication by the jury that the defendant's role was not as depicted by the Government's witnesses.

January 20, 2015            s/s  Joel Vincent for Fritz Blanchard
                                 VINCENT, KANTZ, PITTMAN & THOMPSON , LLC
                                 44 Exchange Street
                                 Portland, Maine 04101
                                 (207) 797-0927
                                 jvincent802@gmail.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

**CERTIFICATE OF SERVICE**

I hereby certify that on January 20, 2015, I caused a copy of the foregoing to be electronically filed on CM/ECF system which will send notification of such filing(s) to the following:

      Gail F. Malone,  Gail.F.Malone@usdoj.gov

Dated: January 20, 2015    /s/ Joel Vincent
                                    Counsel for Defendant Fritz Blanchard
                                    VINCENT, KANTZ, PITTMAN & THOMPSON, LLC
                                    44 Exchange Street
                                    Portland, Maine 04101
                                    (207) 761-1931
                                    jvincent802@gmail.com